IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FAIR POLITICAL PRACTICES COMMISSION, | ) ) ) | 2:12-cv-00093-GEB-CKD |
| Plaintiff, | ) ) | |
| v. | ) ) ) | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S |
| UNITED STATES POSTAL SERVICE, | ) ) | CROSS MOTION FOR SUMMARY JUDGMENT |
| Defendant. _____ | ) ) | |

Pending are cross-motions for summary judgment concerning whether the United States Postal Service ("USPS") properly withheld from the California Fair Political Practices Commission ("FPPC") the quantity of mail sent by a USPS customer. The USPS withheld the requested numerical information under 5 U.S.C. § 552(b)(3) ("Exemption 3") of the Freedom of Information Act ("FOIA"), contending that 39 U.S.C. § 410(c)(2) of the Postal Reorganization Act ("PRA") justified its withholding decision because the PRA is a statute authorized by Exemption 3. Exemption 3 authorizes a statute to exempt matters from disclosure "if the statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld . . . " 5 U.S.C. § 552(b)(3).

1      At the hearing on the motions, the USPS argued that because
2 the number of items mailed by its customer is recorded in USPS Form
3 3602, it constitutes "information of a commercial nature" exempted from
4 disclosure by 39 U.S.C. § 410(c)(2) of the PRA. Section 410(c)(2)
5 prescribes that the following need not be disclosed: "information of a
6 commercial nature, including trade secrets, whether or not obtained from
7 a person outside the Postal Service, which under good business practice
8 would not be publicly disclosed."

9 <center>**I. FACTUAL BACKGROUND**</center>

10      The FPPC is the State of California agency responsible for
11 "the impartial, effective administration and implementation" of
12 California's Political Reform Act of 1974 ("the Act"). (Pl.'s Statement
13 of Undisputed Material Facts ("Pl.'s SUF") ¶ 1 (citing Cal. Gov't Code
14 §§ 83100, 83111).) It is tasked with investigating possible violations
15 of the Act upon receipt of a sworn complaint, and with bringing
16 enforcement proceedings under the Act upon a showing of probable cause.
17 (Pl.'s SUF ¶ 1.) The FPPC previously received a sworn complaint alleging
18 that a recalled California elected official violated the Act's
19 disclosure requirements for mass mailings by mailing over two hundred
20 substantially similar pieces of mail "in connection with a local
21 California campaign." (Decl. of Zachary Norton ("Norton Decl.") ¶ 2.))[1]

22      In response to the complaint, the FPPC served an Investigative
23 Subpoena on the USPS seeking "the number of mail pieces delivered on
24 October 9th, 10th, and 22nd in 2008 using Permit No. 2058." (Def.'s
25 Resp. SUF at ¶ 5.) The USPS considered the FPPC's subpoena under 39

26 ───────────

27    [1] The USPS initially objected to the materiality of paragraphs 1
through 4 of Plaintiff's Statement of Undisputed Material Facts. (Def.'s
28 Resp. SUF ¶¶ 1-4.) However, at the October 9, 2012 hearing, the USPS
withdrew these objections.

C.F.R. § 265.11(a)(6), which prescribes that the USPS may "[h]onor subpoenas or court orders only when disclosure is authorized." The USPS "assesses whether disclosure is authorized [under this regulation] by determining whether documents may be released pursuant to the Freedom of Information Act."(Def.'s Statement of Undisputed Facts ("Def.'s SUF") ¶ 5; Decl. of Alexander W. Wood ("Wood Decl.") ¶ 6.) The USPS later sent the FPPC three responsive postal statements, called Form 3602s, but aside from the permit holder's name, the USPS "redacted virtually all of the [] information on the forms, including the total pieces mailed" under FOIA Exemptions 3 and 4. (Def.'s Resp. SUF ¶ 7.) The FPPC administratively appealed the redaction of these forms to the USPS Chief Counsel. (Def.'s SUF ¶ 8.) The USPS denied the appeal and affirmed the redaction under Exemptions 3 and 4. (Id. at ¶ 10.)

Subsequently, the FPPC filed the instant lawsuit under FOIA, in which it seeks a declaration that the USPS violated FOIA by withholding the records requested based on Exemptions 3 and 4; a declaration that the USPS's actions were so flagrant as to be arbitrary and capricious; an injunction precluding the USPS from asserting Exemptions 3 or 4 in response to the FPPC's request; an order directing the immediate disclosure and production of the requested records; and attorneys' fees and costs. (Compl. ¶¶ 30-35.)

The USPS concedes that the information the FPPC seeks "pertains to an organization that is not a commercial enterprise [and] was mailed in connection with an election campaign that is now over." (Wood Decl. ¶ 11; Wood Decl., Ex. G, 38:9-11; Def.'s Mot. 9:5-6.) Further, the USPS no longer asserts Exemption 4 as a basis for its

withholding decision.[2] Therefore, the sole issue in the motions is whether 39 U.S.C. § 410(c)(2) authorizes the USPS to redact and withhold the quantity of mail sent by the permit holder using Permit No. 2058.

## II. DISCUSSION

"The Freedom of Information Act . . . requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." Milner v. Dep't of Navy, 131 S. Ct. 1259, 1261-62 (2011). However, Exemption 3 of the FOIA does not require disclosure of "matters that are . . . specifically exempted from disclosure by statute . . . if that statute . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii).

"As a general rule, we employ a two-part inquiry to determine whether Exemption 3 applies to a particular FOIA request. First, we determine whether the withholding statute meets the requirements of Exemption 3. Then, we determine whether the requested information falls within the scope of the withholding statute." Carlson v. U.S. Postal Serv., 504 F.3d 1123, 1127 (9th Cir.2007) (citation omitted). When determining whether information falls within the scope of Exemption 3, deference to an agency's interpretation of the withholding statute is

---

[2] See Def.'s Mot. 2:12 n.1. The parties also initially disputed the scope of Plaintiff's FOIA request. See (Pl.'s Cross Mot. for Summ. J. & Opp'n ("Pl.'s Mot.") 4:22-23; 1:5-6 (alleging that the USPS "unilaterally expanded the scope of the appeal to include information about 'mailing costs' and 'mailing dates'" even though the "one piece of information the FPPC sought was simply the number of pieces of mail sent"); Def.'s Reply & Opp'n 6:2-3, 5:20 (asserting that Defendant's confusion about the scope of the request is "understandable" given "Plaintiff's own lack of clarity"). The parties now agree that the FPPC seeks "only the number of pieces mailed," therefore only those arguments concerning the quantity of mail sent are considered here. (Def.'s Reply & Opp'n 6:3-4.)

"inappropriate" because the "basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential." Id. (citation omitted).

The USPS argues that § 410(c)(2) is a withholding statute under Exemption 3 that satisfies the first Exemption 3 requirement. The FPPC does not concede that § 410(c)(2) is a viable withholding statute under Exemption 3, but assumes arguendo that the statute meets the requirements of Exemption 3, and contends: "the Postal Service simply has not and cannot demonstrate that information pertaining to only the number of pieces mailed comes within the scope of that statute." (Pl.'s Mot. 7:22 n.3.) In light of each party's respective argument, the Court "assume[s] without deciding that 39 U.S.C. § 410(c)(2) qualifies as an Exemption 3 statute for purposes of th[e] [motions] and proceed[s] directly to the question whether the requested records fall within the scope of § 410(c)(2)." Carlson, 504 F.3d at 1127.

The USPS asserts that the quantity of mail sent is exempted from disclosure by § 410(c)(2) because this statute does not require disclosure of the following: "information of a commercial nature . . . which under good business practice would not be publicly disclosed." § 410(c)(2).  The Ninth Circuit discussed the scope of § 410(c)(2) in Carlson, holding that the first issue for determination is whether the withheld information is of a commercial nature. Carlson, 504 F.3d at 1129. In Carlson, the Ninth Circuit states: "'[i]nformation is commercial if it relates to commerce, trade, or profit.'" Id. (citation omitted) (applying "the common meaning of the term ['commercial']"). Carlson also states: "The majority of cases which have upheld USPS's withholding of information under § 410(c)(2) have concerned proprietary information." Id.; see, e.g., Wickwire Gavin, P.C. v. U.S. Postal Serv.,

356 F.3d 588, 589 (4th Cir. 2004) (upholding under the PRA's business practice exception the USPS's withholding of "thirteen pages of spreadsheets detailing quantity and pricing information" in which bidders sought "to become USPS's exclusive provider of mailing supplies"); Amer. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 742 F. Supp. 2d 76, 81 & 83 (D.D.C. 2010) (stating that such data as "[t]he Postal Service's decisions regarding lump-sum bonus and salary increases" is properly considered commercial information under the PRA; and that "no evidence [was presented] contradicting the agency's contention that private sector delivery firms would not disclose this information"); Reid v. U.S. Postal Serv., No. 05-cv-294-DRH, 2006 WL 1876682, at *6 (S.D. Ill. July 5, 2006) (upholding the USPS's refusal to release information that could reveal the postage rate it charges mailers, which included the postage amount and the total number of items mailed); Airline Pilots Ass'n, Int'l v. U.S. Postal Serv., No. 03-2384, 2004 WL 5050900 (D.D.C. June 24, 2004) (determining under the PRA's good business practice standard that the USPS need not disclose rate information, methods of operation, and performance requirements contained in a delivery agreement between the USPS and FedEx); Robinett v. U.S. Postal Serv., No. CIV. A. 02-1094, 2002 WL 1728582, at *5 (E.D. La. July 24, 2002) (withholding information "reflecting the Postal Service's evaluation of [plaintiff's] employment application" where such information falls under the Postal Service's "regulations defin[ing] 'information of a commercial nature'" and "ha[s] 'customarily been safeguarded in both the public and private sectors'"); Weres Corp. v. USPS, No. 95-1984 (NHJ), 1996 U.S. Dist. LEXIS 22636, at *9 (D.D.C. Sept. 23, 1996) (deciding that the USPS need not disclose pricing information it received from unsuccessful bidders in response to its

commercial solicitation when the USPS "set forth an undisputed, non-conclusory, and logical 'good business practice' rationale for its decision to withhold unsuccessful bid prices from public disclosure"). Carlson further states: "Post office names, addresses, telephone numbers, hours of operation and final collection times are not 'information of a commercial nature,' and, therefore, are not within the scope of § 410(c)(2)." Carlson, 504 F.3d at 1130.

In this case, the FPPC seeks the number of items mailed by a noncommercial organization in connection with an election that is now over. (Wood Decl. ¶ 11; Norton Decl. ¶ 9.) The USPS contends this information is commercial and proprietary, because "the number of pieces of mail a customer entrusts to the Postal Service is connected with trade and traffic of commerce in general" and because this information "was collected as part of the commercial transaction between the Postal Service and its customer." (Supplemental Wood Decl. ¶ 2; Def.'s Mot. 9:6-7.) "The Postal Service considers the actual number of pieces mailed, whether disclosed in isolation, or connected with other information. . ., to be commercial information and thus not available for disclosure." (Supplemental Wood Decl. ¶ 2.) It argues that the information sought is of a commercial nature because its disclosure could potentially impair the relationship between the USPS and its customers, and could cause such users to use the delivery services of the USPS's competitors, who are not subject to FOIA's requirements. (Def.'s Mot. 10:12-13.) The FPPC counters that it strains credibility to suggest that "*the number of pieces of mail* sent . . . . relates to commerce, trade, or profit, such that it is proprietary to the Postal Service." (Pl.'s Mot. 8:24-25.)

1         The USPS also argues in a footnote in its Reply Brief that the

2 subject information falls within the sixth category of 39 C.F.R. §

3 265.6(b)(3), which it characterizes as a "regulation[] clarifying the

4 type of information that satisfies the good business practice exception"

5 of § 410(c)(2). (Def.'s Reply & Opp'n 6:18 n.4; Def.'s Mot. 8:18-19.)

6 The referenced regulation prescribes in pertinent part: "Records not

7 subject to mandatory public disclosure [include] [r]ecords compiled

8 within the Postal Service which would be of potential benefit to persons

9 or firms in economic competition with the Postal Service." 39 C.F.R. §

10 265.6(b)(3)(vi). The USPS contends that disclosing the quantity of mail

11 sent "could potentially impair the relationship between the Postal

12 Service and its customers" and could cause its customers to "migrate to

13 its competitors, who are not subject to FOIA's requirements." (Wood

14 Decl. ¶ 11; Def.'s Mot. 10:12-13.) The FPPC counters that the USPS's

15 claim—that its competitors could benefit if it disclosed the quantity of

16 mail sent by Respondent—is "completely unsupported." (Pl.'s Mot. 10:2.)

17 The FPPC further argues that the USPS cannot suffer competitive harm

18 since it lacks competitors, given its government sanctioned, criminally

19 enforced monopoly over door-to-door mail service. (Pl.'s Mot. 10:3-11:9;

20 Pl.'s Reply & Opp'n 6:6-10.)

21         As the Ninth Circuit states in <u>Carlson</u>, "because both [the

22 regulation and the statute] require that the information be of 'a

23 commercial nature' in the first instance," the issue here is whether the

24 amount of mail sent by a noncommercial entity in connection with a

25 noncommercial election is "information of a commercial nature," as that

26 term is used in § 410(c)(2). <u>Carlson</u>, 504 F.3d at 1129. The USPS has not

27 supported its conclusion that the mere disclosure of the number of

28 documents mailed in the situation at issue here constitutes "information

of a commercial nature" within the meaning of § 410(c)(2). As the Ninth Circuit states in <u>Kamman v. IRS</u>:

> [FOIA] exemptions are to be narrowly construed by the courts. The burden is on the government to prove that a particular document falls within one of the exemptions. Affidavits of agency employees may be used to satisfy this burden. However, the government may not rely upon conclusory and generalized allegations of exemptions. The affidavits must contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.

56 F.3d 46, 48 (9th Cir. 1995)(citations omitted). Here, the USPS concedes that the sender "is not a commercial enterprise," the documents were "mailed in connection with an election campaign that is now over," and the only information sought is "the number of mail pieces delivered on October 9th, 10th, and 22nd in 2008 using Permit No. 2058." (Wood Decl. ¶¶ 1, 11; Def.'s Resp. SUF at ¶ 5.) The USPS has not shown that the requested information is within the realm of what is considered to be commercial information; nor has it shown how the disclosure of the requested numerical information could potentially impair the relationship between the USPS and its customers. Further, the USPS has not shown that the mail quantities at issue are its proprietary information merely because this information is recorded in USPS Form 3602, since this recording has not been shown to be "information of a commercial nature" within the meaning of § 410(c)(2).

Nor, despite its asserted concerns, has the USPS shown that disclosure of the specific and limited information at issue here could result in the users of the USPS's mail delivery services ceasing to use the USPS for such services and instead using the services of the USPS's competitors, who are not subject to FOIA's requirements. This assertion is not supported with facts showing that the information is commercial

in nature, or that any of USPS's competitors would not have to release such information in response to a subpoena from the FPPC. It is undisputed that California "Government Code Section 83118 provides the FPPC with the power to subpoena any records . . . material to the performance of FPPC's duties," which include enforcing the disclosure requirements for political mass mailings. (Wood Decl., Ex. C.)

"[I]t is clear that the Postal Service may not rest [its arguments for its withholding decision] on bare allegations as to what might be," and that such conclusory assertions are insufficient support for its exemption decision. Nat'l W. Life Ins. Co. v. United States, 512 F. Supp. 454, 462 (N.D. Tex. 1980). "In light of the clear Congressional policy favoring disclosure of governmental information, this court can find no reason to distinguish between the Postal Service and other" entities that could be required to disclose the same type of numerical information in response to a FPPC subpoena. Id. at 462.

### III. CONCLUSION

Since the FPPC requests just the amount of mail sent by an admittedly noncommercial enterprise in connection with a completed noncommercial California election, and the USPS has not shown that this request involves "information of a commercial nature" under § 410(c)(2), Exemption 3 is inapplicable, and the information sought must be disclosed. Therefore, the USPS's Motion for Summary Judgment is DENIED, and the FPPC's Cross Motion for Summary Judgment is GRANTED as follows: the USPS shall provide the FPPC with the requested information, namely, the number of pieces of mail sent on October 9th, 10th, and 22nd in 2008
/
/
/

using Permit No. 2058, within twenty (20) days of the date on which this Order is filed. Judgment shall be entered in favor of the Plaintiff.

Dated:   October 15, 2012

GARLAND E. BURRELL, JR.
Senior United States District Judge